Wilcox v. International Harvester Co. of America, 198 Ill. App. 33.

# Jesse Wilcox, Administrator, Defendant in Error, v. International Harvester Company of America, Plaintiff in Error.

## Gen. No. 21,725.

1. MASTER AND SERVANT, § 701*—*when evidence sufficient to support findings in action under Occupational Diseases Act.* In an action under the Occupational Diseases Act (J. & A. ¶ 5433) to recover for the injury to one employed as a compositor, alleged to have been caused by an occupational disease, evidence examined and *held* sufficient to support the jury's finding that lead poisoning is an incident to the work of a compositor; that plaintiff suffered from lead poisoning; that the disease was contracted in defendant's shop, and was contracted because of the wilful violation of the Occupational Diseases Act by defendant; that the disease continued for two years and finally caused plaintiff's death.

2. ABATEMENT AND REVIVAL, § 2*—*what actions within Survival Act.* The provision of the Survival Act of 1872 (J. & A. ¶ 172), that "actions to recover damages for an injury to the person" shall survive the death of the person injured, applies only to cases where the injured person dies from some cause other than his injuries, and if death result from his injuries, the action must be under the Injuries Act (J. & A. ¶ 6184).

3. ABATEMENT AND REVIVAL, § 2*—*when action for personal injury does not survive at common law.* There is no basis at common law for the recovery of damages for the death of a human being,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CXCVIII 3

and a right of action for a personal injury dies with the person injured.

4. ABATEMENT AND REVIVAL, § 2*—*when right of action under Occupational Diseases Act survives.*  The Survival Act (J. & A. ¶ 172; Ill. Rev. St., ch. 3, sec. 123) applies to the right of action given by section 15 of the Occupational Diseases Act (J. & A. ¶ 5447) to one whose health has been injured, and where the plaintiff dies, pending the action, from the disease his administrator may be substituted as plaintiff.

5. DEATH, § 14*—*where separate rights of action arise under Occupational Diseases Act.*  Section 15 of the Occupational Diseases Act (J. & A. ¶ 5447) gives separate rights of action to the person sustaining an injury to his health by a wrongful violation of the act, and to his widow, lineal heirs, dependent children and other dependents in case of his death from the disease.

6. JUDGMENT, § 238*—*when entry nunc pro tunc proper.*  Where plaintiff in a cause of action which survives dies after a verdict is returned in his favor, but before judgment is entered, judgment may be entered *nunc pro tunc* as of the day the judgment was returned.

7. TRIAL, § 256*—*when poll of jury not waived by agreement for sealed verdict.*  An agreement for a sealed verdict does not carry with it by implication a waiver of the polling of the jury.

8. TRIAL, § 256*—*when objection for failure to poll jury waived.*  One who permits without objection the entry of an order for a sealed verdict, which contains a provision waiving the polling of the jury, cannot be heard to object on appeal that he was not permitted to poll the jury.

9. EVIDENCE, § 282*—*when medical books admissible.*  While medical books are not admissible as substantive proof of the facts they set forth, where an expert testifies that his opinion is based on a medical book or report, such book or report may be read to contradict him, and this may be done where the statement that he relied on such book or report is elicited on cross-examination.

10. APPEAL AND ERROR, § 1489*—*when admission of improper evidence not ground for reversal.*  Even though the court admits in evidence statements from medical books and reports which are not admissible, such admission is not ground for reversal where the judgment is supported by other evidence.

HOLDOM, J., dissenting.

Error to the Circuit Court of Cook county; the Hon. BENJAMIN W. POPE, Judge, presiding.  Heard in this court at the October

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

term, 1915.   Affirmed.   Opinion filed February 14, 1916.   Rehearing denied February 28, 1916.

DAVID A. OREBAUGH, for plaintiff in error; EDGAR A. BANCROFT, of counsel.

CHARLES C. SPENCER, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

Mary V. Sheetz began work as a compositor in the printing shop of the defendant corporation in November, 1910, and worked there setting and distributing type for two years.   She then became ill and was not afterwards able to work.   She brought this action April 1, 1914, and it was tried in December of that year.   A verdict was returned December 31st finding defendant guilty and assessing plaintiff's damages at $10,000. Plaintiff died January 3, 1915.   Her death was suggested and January 23rd Jesse Wilcox as her administrator was substituted as plaintiff.   February 6th plaintiff remitted $2,000 and judgment for $8,000 damages was entered *nunc pro tunc* as of December 31, 1914.

Plaintiff's right of action is based on the Occupational Diseases Act of 1911.   (Laws of 1911, p. 334, J. & A. ¶ 5433.)   The Act provides *inter alia* as follows:

"Sec. 1.   That every employer of labor in this State, engaged in carrying on any work or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employes to the danger of illness or disease incident to such work or process, to which employes are not ordinarily exposed in other lines of employment, shall, for the protection of all employes engaged in such work or process, adopt and provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process." (J. & A. ¶ 5433.)

"Sec. 15. For any injury to the health of any employe proximately caused by any ·wilful violation of this Act or wilful failure to comply with any of its provisions, a right of action shall accrue to the. party whose health has been so injured, for any direct damages sustained thereby; and in case of the loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of such deceased person, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support upon such deceased person, for a like recovery of damages for the injury sustained by reason of such loss of life, not to exceed the sum of ten thousand dollars: *Provided,* that every such action for damages in case of death shall be commenced within one year after the death of such employe." (J. & A. ¶ 5447.)

The fundamental question in the case is whether or not lead poisoning is an occupational disease incident or peculiar to the work of a compositor. If it is not, the act does not apply and there can be no recovery.

There is in the record much opinion evidence on the question presented, given by physicians, compositors, managers and foremen of printing offices and by an expert in occupational lead poisons, employed by the Federal Department of Labor and formerly employed by the State of Illinois in the same capacity. The testimony of the expert witnesses is conflicting and we shall not attempt to state even the substance of it. Dr. Alice Hamilton, the government expert above mentioned, called by the defendant, testified that in Bulletin 95, issued by the United States Government, it was stated that a most remarkable freedom of lead poisoning was found among the members of the London Society of Compositors, and she also testified that in the same report it was stated that in ten years there were 1,780 cases of lead poisoning in the printing trades in Vienna and its neighborhood.

A careful examination of the evidence has led the majority of the court to the conclusion that from it the

jury might properly find that lead poisoning is an incident to the work of the compositor; that plaintiff suffered from lead poisoning from November, 1912, to the time of the trial; that the disease was contracted in the shop of the defendant, and was contracted because of the wilful violation of the Occupational Diseases Act by the defendant, and that the disease so contracted continued for two years and finally caused her death.

Section 15 of the Act (J. & A. ¶ 5447) gives a right of recovery to any person sustaining injury to his health by reason of a wilful violation of the act; and the question is presented whether in case of the death of the plaintiff from disease so contracted, the right of action for injury to his health survives. In this State, independently of the Occupational Diseases Act, where death results from the wrongful act, the cause of action does not survive. The Survival Act of 1872 amending section 123 of the Administration Act (J. & A. ¶ 172), and providing that "actions to recover damages for an injury to the person, except slander and libel," shall survive the death of the person injured, has reference only to cases where the injured person dies from some cause other than his injuries, and if death is the result of his injuries, then the action must be brought under the Injuries Act. *Ohnesorge v. Chicago City Ry. Co.,* 259 Ill. 424.

In this case the contention of defendant in error is that plaintiff's death was caused by lead poisoning which resulted from the wilful violation of the Occupational Diseases Act by the defendant. A recovery can only be sustained on the theory that the right of action for the injury to plaintiff's health, caused by the wilful violation by the defendant of the Occupational Diseases Act, survives, although such injury to her health caused her death.

By the common law the death of a human being, although wrongfully caused, affords no basis for recovery of damages, and a right of action for personal

38 · APPELLATE COURTS OF ILLINOIS.

Wilcox v. International Harvester Co. of America, 198 Ill. App. 33.

injury dies with the person injured. Therefore, in cases like this, the right of recovery depends entirely upon the statute law. It is by the Occupational Diseases Act and the Survival Act that we must test the objection that the administrator of the plaintiff cannot recover for the injury to her health because such injury caused her death. Section 15 of the Act gives a right of action to any person sustaining an injury to his health by reason of a wrongful violation of the statute, and also gives a right of action in case of loss of life to the widow, lineal heirs, dependent children, and others dependent on the deceased person. Section 9 of the Federal Employers' Liability Act (36 Statutes, 143, sec. 291 provides): "That any right of action given by this Act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee; but in such cases there shall be only one recovery for the same injury." Paragraph 1 of the Act provided for two distinct rights of action; one in the injured person for his personal loss and suffering where the injuries are not immediately fatal; and the other in his personal representative where the injuries immediately or ultimately result in death. Before the enactment of section 9 there was no provision for the survival of the right given to the injured person, and so under the operation of the rule of the common law it would die with him.

In *St. Louis, I. M. & S. Ry. Co. v. Craft,* 237 U. S. 648, 9 N. C. C. A. 754, it was held that the right of action given by the statute to the injured person, and the right of action given to his personal representative for the benefit of the widow, etc., of the injured person, were entirely separate and distinct, and that a recovery might be had on both rights of action. In the opinion it was said:

"Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong."

It is true that the Federal Employers' Liability Act provided in terms that a right of action given by the act to a person suffering an injury should survive to his or her personal representative. The statute of 1872 provides that, "In addition to the actions which survive by common law, the following shall also survive: Actions of replevin, actions to recover damages for an injury to the person, except slander and libel." Illinois Rev. St., ch. 3, sec. 122 (J. & A. ¶ 172). We think that the Survival Act applies to the right of action of the party whose health has been injured, given by section 15 of the Occupational Diseases Act (J. & A. ¶ 5447); that the two causes of action given by that section are separate and distinct; that the right of action given to the injured person is in no way affected by the giving of another right of action to the widow of the injured person and others in case of his death. It follows from what has been said that in our opinion the court did not err in substituting the administrator of the plaintiff as the plaintiff.

As the right of action survived the court did not err in entering judgment *nunc pro tunc* as of the day the verdict was returned. *Bunker v. Green,* 48 Ill. 243.

The cause was submitted to the jury December 30th. On that day the counsel for the respective parties agreed that if a verdict was not returned by the usual time of adjournment for the day, the jury might seal the verdict and leave it with the clerk to be opened and read the next day. The court thereupon directed the

40 APPELLATE COURTS OF ILLINOIS.

Wilcox v. International Harvester Co. of America, 198 Ill. App. 33.

clerk to enter an order that in case the jury agreed after the hour of adjournment, they should sign and seal the verdict, and that in such case they were discharged from further service and the polling of the jury was waived. The order that the jury be discharged and the polling of the jury waived was entered on the theory that the agreement for a sealed verdict carried with it by implication a waiver of the polling of the jury. This was erroneous, for the agreement for a sealed verdict carried with it no such implication. But if the defendant objected to the order, he should have made it known to the court. A party has no right to stand by and permit steps to be taken without objection, and if the result does not favor him then raise objections. *Powell v. Feeley,* 49 Ill. 143. Again, the conduct of the defendant was such that it cannot now be heard to object that it was not permitted to poll the jury. The time to make the objection was before the verdict was opened, and if this had been done the jurors might have been brought in and the verdict read in their presence; but the defendant made no objection to the opening and reading of the verdict until ten days afterwards.

The rule is well settled in this State that medical books are not admissible as substantive proof of the facts they set forth; but where an expert witness testifies that his opinion is based on a medical book or report, such book or report may be read to contradict him, and this may be done where the statement that the witness relied on such book or report is made on cross-examination. *Pinney v. Cahill,* 48 Mich. 584. Medicine is not considered one of the exact sciences; it is of that character of inductive sciences which are based on data which each successive year may correct and expand, so that what is considered a sound induction last year may be considered an unsound one this year; and we cannot tell whether what we read is not something

that the author now rejects.    In this case Dr. Alice Hamilton, the government expert, testified that her views had changed on some of the points since she wrote the report of the committee appointed by the Governor of Illinois to investigate as to the facts preparatory or preliminary to the passage of the Occupational Diseases Law, which was drafted by her; that since that time she had traveled in England, Belgium and Austria making investigations of lead industries and now knew more about certain industries than she did then; that she was not very proud of the report wherein she stated the different divisions in the printer's trade that were most dangerous; that she would not put it in that way now; that she now knew a great deal more than she did in 1910.

The court improperly admitted certain statements from medical books and reports that were not admissible for the purpose of contradiction; but in view of all the evidence we do not think that for the admission of such evidence the judgment should be reversed.  In the opinion of the majority of the court the record is free from reversible error, and the judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLDOM dissenting.  With some hesitation and much trepidation I dissent from the conclusions to which my brethren have come in the disposition of this case.

My mind is not convinced from the proofs in the record that the plaintiff's physical troubles which, after verdict, culminated in her death, were attributable to "lead poisoning" or that "lead poisoning" is an occupational disease within the meaning of the "Occupational Disease Act" of 1911.    Neither do I believe that the manner or method in which defendant conducted its composing room in which plaintiff worked as a compositor offended that act.    It is my opinion from the evidence that plaintiff suffered from perni-

42    APPELLATE COURTS OF ILLINOIS.

Wilcox v. International Harvester Co. of America, 198 Ill. App. 33.

cious anemaeia and that such anemaeia was in no way traceable to "lead poisoning." There is much evidence in the record of a very conflicting nature as to "lead poisoning" being an "occupational disease," as applied to compositors. To my mind there is no distinct preponderance of proof upholding such contention, but it seems to me that the conclusion at which a majority of the court have arrived is grounded on surmise and conjecture. There is no reliable evidence in the record which in my judgment warrants the conclusion that plaintiff was afflicted with "lead poisoning." There is much testimony of a theoretical character that "lead poisoning" is a disease contracted by compositors in the exercise of their calling, but most all of the testimony from witnesses who have practical knowledge and experience of the subject is strongly against such contention. I do not believe that it can be said to be proven by a clear preponderance of the medical evidence found in the record that plaintiff did suffer from lead poisoning. To reach such a conclusion, it seems to me is to do so by a strong-handed method and not from the weight of the evidence. It is my judgment that no cause of action is established by the proofs.