May v. Belleville Enameling & Stamping Co., 247 Ill. App. 275.

---

## Nora May, Administratrix of the Estate of Thomas May, Deceased, Appellee, v. Belleville Enameling & Stamping Company, Appellant.

1. EVIDENCE—*degree of proof required.* Absolute certainty is neither required nor expected before a fact can be said to be proven in a civil case.

2. DEATH BY WRONGFUL ACT—*cause of death as question for jury.* In an action under the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185 *et seq.*, against an enameling company for the death of a former employee, a sandblaster, the question whether he died from silicosis, a sandblaster's disease, contracted while in the employ of the company, was a question of fact for the jury.

3. MASTER AND SERVANT—*meaning of wilful violation of Occupational Diseases Act.* A wilful violation of duty within the meaning of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185 *et seq.*, signifies a conscious violation.

4. MASTER AND SERVANT—*failure to repair as violation of Occupational Diseases Act.* The deliberate operation of a sandblast apparatus by an enameling company, without making adequate repairs to prevent dust accumulating in a sandblast room, is a violation of the company's duty to a sandblaster as defined by the Occupational Diseases Act, section 1, Cahill's St. ch. 48, ¶ 185.

5. MASTER AND SERVANT—*evidence admissible under issues in action based on Occupational Diseases Act.* The issues made in a declaration in the language of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185, for the death of a sandblaster are broad enough to permit evidence showing sandblast equipment to be defective and out of repair for considerable periods of time as indicating the company did not provide reasonable means or methods for the prevention of occupational disease.

6. MASTER AND SERVANT—*intent of Occupational Diseases Act.* The passage of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185 *et seq.*, implies that the class of employees, for whose protection it had been intended, had not been able to protect themselves without it.

7. MASTER AND SERVANT—*measure of duty under Occupational Diseases Act.* The measure of the duty of an employer under the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185 *et seq.,* is no longer reasonable care to furnish a safe place, safe machinery and tools, but, in addition to such reasonable care, he must use in his business the means and methods required by the statute.

Appeal by defendant from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1927. Affirmed. Opinion filed January 20, 1928.

FARMER & KLINGEL, for appellant.

CLYDE D. MILLER, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment for $7,000 recovered by appellee against appellant under the provisions of the Occupational Diseases Act of Illinois, Cahill's St. ch. 48, ¶ 185 *et seq.*

The declaration charged that appellant used a process for cleaning castings known as "Sandblasting"; that in the process sand was forced by compressed air against the castings; that in carrying on the operations the air is filled with fine particles of sand from the sandblasting machine, and that such particles of sand may and do affect the health of persons engaged in the sandblasting work; that said particles collecting in the lungs of the worker, so engaged in sandblasting, cause a disease known as silicosis or "sandblasters' disease"; that such disease is peculiar to persons engaged in sandblasting.

The declaration further charged that appellant, well knowing the premises, wilfully failed and refused to adopt and provide reasonable and approved devices, means, or methods for the prevention of such disease, in that it did not provide means for carrying off the particles of sand in the air, or blowers of sufficient

suction to carry off the air impregnated with sand, or guards of any kind to keep the air from becoming filled with sand, nor did it provide sufficient masks or respirators to keep the employees engaged in such work from inhaling the sand particles.

The declaration further charged that appellee's intestate was employed by appellant as a sandblaster from January 1, 1923, to February 13, 1926, and, while in appellant's employ, he became diseased because of his lungs becoming filled with the particles of sand, due to his employment as a sandblaster, and that he died from such disease on September 9, 1926.

Appellant was engaged in the operation of an enameling plant, and, as a part of the business, it was necessary to clean and render smooth certain iron castings before applying the enamel. The work of cleaning the castings was done by means of sandblasting.

The sandblasting equipment used by appellant consisted of a sandblast room made of sheet iron about eight by ten feet and about seven feet high, with no outside opening except a door on one side, which was used for taking the castings in and out and for the purpose of ingress and egress. The ceiling of this room was slotted for the purpose of admitting air, and the floor was grated to permit the sand and air to be drawn down out of the room, the sand falling into a hopper underneath the grating.

The castings were placed on a table in this room, and by means of a hose used by the operator, the air and sand were forced under pressure against the castings in order to remove the grit and dirt therefrom. The sand used in the process of cleaning fell through the grating in the floor into a hopper, where it was carried by means of air suction through certain pipes into a separator, in which the clean sand was supposed to be removed and used again.

The air, sand and dust particles in the room were supposed to be removed by a large revolving ventilating fan, which was calculated to change the air in the sandblast room ten times per minute.

The men engaged in the sandblasting worked in pairs, relieving each other at the end of each half hour during an 8-hour shift.

A helmet, respirator and goggles were furnished employees by appellant to use when engaged in working in the sandblast room. The evidence offered by appellant showed that the equipment, as originally installed, was of standard make, and was quite extensively used by manufacturers for cleaning castings.

The evidence showed that appellee's intestate (Thomas May) was in the employ of appellant as a sandblaster continuously from February, 1923, to February, 1926, when he quit work on account of some disagreement with his foreman.

Some time after leaving his employment, the deceased became sick, was afflicted with severe coughing spells, and came under the doctor's care in July, 1926.

Dr. Portuondo testified for appellee that he treated the deceased from July 4, 1926, until September 4, 1926, and that, at the time of his death, he was suffering from a chronic inflammation of his lungs and from silicosis.

The doctor testified that silicosis is supposed to be a chronic inflammation of the lungs due to stone getting into the lungs, irritating them, and, as a result, a tissue forms around the foreign substance, and the lungs are unable to get air; that when he first treated the deceased he had symptoms of lung trouble and kidney disease, was having a cough and shortening of breath; that the main trouble was nephritis, and that he issued a death certificate giving the cause of death as interstitial nephritis, although he had both lung trouble and kidney disease at the time; that he was so

swollen that he called it kidney disease, but could have called it lung disease as well.

In February, 1927, about five months after May's death, his body was exhumed, and three doctors held an autopsy. They testified on the trial that the condition of May's lungs showed that he had silicosis or sandblasters' disease; that there were no signs of tuberculosis in the lungs; that there was a fibrous and connective tissue in the lungs due to deposit of silicon, and that there was no other cause which would contribute to this condition outside of silicosis.

Dr. Gradwohl testified for appellee that most of the lungs had no air in them; that the air spaces were obliterated or destroyed by the growth of fibrous tissue, and that there was only a slight degree of nephritis.

Dr. Frein, a witness for appellee, testified that he was called in consultation with the attending physician on August 22, 1926, and that at that time an examination showed that May's lungs were consolidated; that he had a fever of 100 degrees, and that the kidney examination showed two plus albumin, sugar negative.

Dr. Stiehl, a witness for appellee, testified that he assisted in the post-mortem; that the heart and kidneys were normal; that silicosis is not found among all classes of occupations, but is peculiar to stonecutters and sandblasters.

All of the medical witnesses, who testified, were offered in support of appellee's case.

The first point urged by appellant is that appellee's evidence does not prove the allegation in the declaration that May died of silicosis.

Absolute certainty is neither required nor expected before a fact can be said to be proven in a civil case.

The question whether May died from silicosis, contracted by him while working for appellant, was a question of fact for the jury to decide from the evidence, and, after careful examination, we are of the

280     Appellate Courts of Illinois.

May v. Belleville Enameling & Stamping Co., 247 Ill. App. 275.

opinion that the evidence in the record is sufficient to establish the fact that May died from silicosis or sand-blasters' disease contracted while in the employ of appellant; and that such disease is peculiar to those engaged in sandblasting work, to which workers are not ordinarily exposed in other lines of employment.

The determination of these questions of fact was for the jury to pass upon, and we do not feel warranted in setting aside the verdict of the jury on these propositions. (*Dandurand v. Hydrox Co.*, 222 Ill. App. 267.)

The second point, which counsel urge for reversal, is that appellee failed to prove the charge of wilful failure of duty, alleged in the declaration, in substantially the same language as is contained in section 1 of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185.

A wilful violation, within the meaning of the statute, signifies a conscious violation. An act consciously omitted is wilfully omitted within the meaning of the word "wilful." (*Kellyville Coal Co. v. Strine*, 217 Ill. 516.)

The testimony of several witnesses for appellee tended to show that, while the sandblast room was in operation, during the time May worked for appellant, the pressure of the air and sand against the castings created a dust which remained in the sandblast room while the operator was working; that the suction equipment was operated over quite a period of time while it was faulty; that frequently holes were worn in the air pipes and, as a result, the suction pipes did not remove the sand dust from the room; that, because of worn pipes, the air pressure was reduced, and the sand was not removed from the room, and, as a result, the operators inhaled the fine particles of sand; that sometimes the sand chute would be clogged for a week, and the employees continued to operate the same while in disrepair; that complaints of the defective equipment were made to the foreman; that, pending the fixing of

the apparatus, rags were put in the holes as a temporary repair.

The testimony offered by appellant tended to show that the sandblast equipment and devices used by it were standard and approved devices in the trade; that, by reason of the air and sand being constantly used under high pressure, frequent repairs were necessary in order to obtain efficiency from the sandblast apparatus; and that, pending the making of repairs, more or less dust would accumulate in the sandblast room; and that, at times, this was difficult to prevent.

The evidence was conflicting as to whether the repairs were promptly made, and whether the sand and dust were knowingly allowed to accumulate and to permeate the sandblast room to the serious detriment of the health and safety of the employees of appellant. To deliberately operate the sandblast apparatus, without making adequate repairs to prevent the dust accumulating in the sandblast room, was a violation of appellant's statutory duty as defined in section 1 of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185.

Counsel contend that the proof offered by appellee, showing the sandblast equipment to be defective and out of repair for considerable periods of time, was not germane to the issues made by the declaration, in that the same did not charge failure to keep the equipment in repair.

The charge made in the declaration is in the very language of the statute, and the issues made were broad enough to permit this evidence tending to show that appellant did not provide reasonable means or methods for the prevention of such occupational disease.

The duty enjoined upon appellant by the statute is a continuing duty, and a device, which does not properly function because of lack of adequate repair, cannot be said to be a reasonable means for the prevention of industrial disease.

The passage of the statute in question implies that the class of employees, for whose protection it was intended, had not been able to protect themselves without it.

The duty of the master has been changed. He may no longer use such machinery and appliances as he chooses. The measure of his duty is no longer reasonable care to furnish a safe place, safe machinery, and tools, but, in addition to such reasonable care, he must use in his business the *means and methods required by the statute*. (*Streeter v. Western Wheeled Scraper Co.,* 254 Ill. 244, 256.)

In *Dandurand v. Hydrox Co., supra,* it was held that a "plaintiff was justified in asserting and proving, or attempting to prove, the failure of the defendant to observe the protective measures or use the devices mentioned in various sections of the act under the theory that all such devices, means or methods are fairly included within the category of 'reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases,' incidental to the work in question, as specified in section 1 of the act," and it was shown that the apparatus so used by the employer was defective for want of timely and adequate repair.

It is next contended that the court erred in giving and modifying certain instructions. These instructions were not peremptory in their language, but required the jury to find affirmatively those provisions of the statute, which were essential, in order to recover for a wilful violation.

We believe these instructions were proper, and that no error was committed by the court in modifying and giving them as modified.

For the reasons above stated, the judgment of the circuit court is affirmed.

*Affirmed.*