**Leon Montagne, Appellee, v. Belleville Enameling & Stamping Company, Appellant.**

Opinion filed July 16, 1928.

FARMER & KLINGEL, for appellant.

CLYDE D. MILLER, for appellee.

MR. JUSTICE NEWHALL delivered the opinion of the court.

This appeal is prosecuted to reverse a judgment for $12,500 recovered by appellee against appellant for injuries to appellee's health, which he claims to have sustained by reason of having contracted silicosis while in the employ of appellant as a sand-blaster.

The suit is based upon section 1 of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185 *et seq.*, of Illinois. The declaration charges that appellant conducted an enameling plant wherein stove castings were cleaned by the process of sand-blasting whereby sand was forced by compressed air against the castings contained in a steel room inclosure; that this work caused the air in the room to be filled with fine particles of sand; that the sand particles collecting in the lungs of employees engaged in sand-blasting, causing them to contract silicosis, or "sand-blasters disease," which disease is peculiar to persons engaged in that business; that appellant wilfully failed to provide reasonable and approved devices for the prevention of

such diseases, in that it failed to provide means for carrying off the particles of sand in the air or blowers of sufficient suction to carry off the air impregnated with sand, or masks or respirators to keep employees engaged in such from inhaling sand particles; that appellant permitted its devices to become and remain in disrepair. As a result thereof appellee contracted silicosis, causing him to become sick, permanently injured and incapacitated and his life shortened.

To this declaration appellant filed general issue and two special pleas. These special pleas alleged that both parties were working under the provisions of the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.*, and at the time appellee received his injuries appellant was engaged in the operation of an enamel plant in which it carried on the process of manufacturing and labor in which certain lead products were used in harmful quantities; wherefore, it was averred by said pleas that appellee's injuries arose out of and in the course of his employment with appellant, within the meaning of section 2 of said Occupational Diseases Act, Cahill's St. ch. 48, ¶ 186, and that appellee was precluded from maintaining an action at law against appellant.

Appellant was engaged in the operation of an enameling plant, and its business consisted in placing a quantity of enamel upon castings brought to it for that purpose by other foundry men and stove manufacturers. In the preparation of these castings for the enameling process, their outer surface is required to be first cleaned and rendered smooth and this work is done by means of sand-blasting.

Sand-blasting equipment used by appellant consisted of sand-blast room made of steel about 8 by 10 by 7 feet high, with double doors in the front, used for taking castings in and out and for the purpose of ingress and egress. The ceiling of this room was slotted for the purpose of admitting air, the floor was grated to

permit the sand and air to be drawn down out of the room, the sand falling into a hopper underneath the grating.

The castings were placed on a table in this room and by means of a hose used by the operator the air and sand were forced under pressure against the castings in order to clean and render them smooth. The sand used in the process of cleaning fell through the grating of the floor into a hopper where it was carried by means of air suction into certain pipes through a separator in which the clean sand was supposed to be removed and used again.

The air, sand and dust particles of the room were supposed to be removed by a large revolving ventilator fan which was calculated to change the air in the sand-blast room ten times per minute. The men engaged in the sand-blast room worked in pairs relieving each other at the end of every half hour during an 8 hour shift.

A helmet, respirator and goggles were furnished employees by appellant to use when engaged in working in the sand-blast room. The evidence offered by appellant showed that the equipment, as originally installed was of standard make and was quite extensively used by manufacturers for cleaning castings.

The material used by appellant for enameling castings was composed in part of lead and litharge, and a large portion of the castings that were enameled by appellant were required to be re-enameled on account of defects in the original enameling and the old enamel was removed from the castings by the process of sand-blasting.

Appellee was about 50 years of age, worked as a coal miner for about 25 years before he worked for appellant as a sand-blaster. His employment for appellant began in March, 1925, and ceased in August, 1926, when he became sick with lead poisoning and quit appellant's employ. He was treated for lead poisoning

until some time in September, 1926, having made claim and being paid compensation for his time lost on account of his illness.

In October, 1926, appellee became sick and his family physician examined him and diagnosed his trouble as anthracosis, but when called as a witness for appellee stated that appellee had silicosis.

The first point urged by appellant is that the court erred in overruling appellant's motions made at the close of the evidence of appellee and renewed at the close of all the evidence, first, to dismiss the suit for want of jurisdiction, and second, to instruct the jury to find appellant not guilty.

Appellant's contention is that appellee should have proceeded under Workmen's Compensation Act instead of under Occupational Diseases Act. There is no contention nor any proof in the record tending to show that appellee's ailments were the result of lead poisoning. Paragraph 2, subdivision (b) of section 15 of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 199, subd. (b), par. 2, provides as follows: The words "occupational disease" means a disease peculiar to and due to the nature of an employement in one or more of the occupations referred to in section 2 of this act, Cahill's St. ch. 48, ¶ 186.

In *Kelley v. St. Louis Smelting & Refining Co.*, 307 Ill. 367, on page 371, it was said: "Section 2 relates to certain lines of industry which are declared to be 'especially dangerous to the health of employees.' This section not only purports to cover those employments which require the using and handling of a variety of lead preparations in harmful quantities or under harmful conditions and where brass is manufactured or lead or zinc is smelted."

Silicosis or sand-blasters' disease is not peculiar to the nature of any occupation mentioned in section 2 and the proof in the record fails to sustain appellant's contention that appellee's ailment was due to the han-

dling of those poisonous chemicals, minerals or other substances mentioned in said section 2.

Appellant's second contention is that appellee failed to prove that appellant was guilty of the wilful violation of the statute as charged against it in the declaration.

The testimony offered by appellant tended to show that the sand-blast equipment and devices used by it were standard and approved devices that were in common use by other manufacturers engaged in the same line of business; that by reason of the air and sand being constantly used under high pressure, frequent repairs were necessary in order to obtain efficiency from the sand-blast apparatus; and that pending the making of repairs more or less dust in considerable quantities would accumulate in sand-blast room and that at times this was difficult to prevent.

Several witnesses for appellee testified that holes frequently wore in the sand pipe thereby reducing the air suction and increasing the amount of sand and dust in the sand-blast room and that repairs made by appellant were not timely, sufficient or adequate to overcome this loss of suction; that whenever holes wore in the suction pipes the sand would not be removed efficiently and temporary repairs were made by stuffing the holes with rags; that frequently complaints were made by the employees concerning failure of appellant to promptly make repairs; that this condition of disrepair of the pipes was quite frequent and by reason thereof there was an extra amount of sand and dust allowed to accumulate in the sand-blast room to the detriment of the workers therein.

There was some testimony on the part of appellee tending to show that the suction fan was out of repair; that the doors of the sand-blast room were warped and did not fit tightly, thereby reducing the amount of suction in the sand-blast room.

The evidence was conflicting as to whether the repairs were promptly made and whether the sand and dust were knowingly allowed to accumulate and permeate the sand-blast room to the serious detriment to the health and safety of the employees of appellant. To deliberately operate the sand-blast apparatus, without making adequate repairs to prevent dust accumulating in the sand-blast room, was a violation of appellant's statutory duty as defined in section 1 of the Occupational Diseases Act, Cahill's St. ch. 48, ¶ 185. (*May v. Belleville Enameling & Stamping Co.* 247 Ill. App. 275.)

Appellant next contends that there is no proof silicosis is an occupational disease and that appellee did not establish that the disease from which he is suffering is silicosis.

Dr. Wilson, witness for appellee testified that he first saw appellee in October, 1927, and diagnosed appellee's ailments as silicosis or sand-blast disease; that it is caused by breathing in particles of fine sand; that inhaling of sand causes a breakdown of air cells and bronchial tubes and is followed by the formation of scar tissue or fibrosis; that the scar tissue affects the breathing; that the final result is death, and that appellee was entirely incapacitated for any kind of work.

Dr. Lougeay testified on behalf of appellee that he was acquainted with the disease known as silicosis; that it was caused by inhalation of sand or silica; that sand-blasters were susceptible to the disease; that sand causes irritation to the air cells of the lungs causing scar tissue to form, cutting down the air supply thereby affecting the breathing. On examination of the appellee it was found that he had an advanced case of silicosis, was in a critical condition and that it was permanent.

Medical testimony offered by appellant tended to show that appellee was suffering from anthracosis

rather than silicosis, and that an X-ray offered in evidence showed a condition similar to silicosis; that an examination of the X-ray plate showed that there were numerous foreign particles deposited in both lungs; that examination of the X-ray plate did disclose the difference between anthracosis and silicosis. Some of the witnesses testified that anthracosis could only arise where the patient was subjected to dust from hard coal. The proof was that appellee had never worked where there was hard coal dust. It is clear from the evidence that appellee's condition was due to foreign particles which produced a fibrous condition of the lungs. The proof showed that appellee had come in contact with sand dust in large quantities; that he inhaled the same and had at times coughed and spit up considerable quantities of sand.

In *Jannusch v. Weber Bros. Metal Works,* 249 Ill. App. 1, it was said in a recent case involving an employee who contracted tuberculosis through inhaling metallic dust and it was held:

"It is, of course, impossible in a case of this kind to prove the cause of a disease with anything like mathematical accuracy or with the certainty with which the results of other causes may be shown. Medicine is not an exact science. Its method is that of induction rather than deduction, and we think, contrary to the first contention of the defendant here, that the evidence we have recited, with a great deal of other evidence which is in the record, made a question for the jury as to whether the plaintiff contracted this disease in the course of his employment at the plant of the defendant. As to what is an occupational disease within the meaning of the statute, the answer is found in section 1 of the statute (Cahill's St. ch. 48, 185; Smith-Hurd's Ill. Rev. St. 1927, p. 1309), which in substance provides that every employer engaged in carrying out any work or process which might produce any illness or disease peculiar to the work or

process carried on, or which subjects the employees to the danger of the illness or disease incident to such work or process to which employees are not ordinarily exposed in other lines of employment, shall provide certain means for the protection of such employees from these diseases.''

In *May v. Belleville Enameling & Stamping Co.*, 247 Ill. App. 275, we held that the question whether the intestate in that case died from silicosis contracted while working for appellant, under conditions similar to those shown in this record, was a question of fact for the jury to decide from the evidence.

The proof in this record as to the manner of operation of appellant's plant is substantially the same as that shown by the record in the *May* case. After careful examination of the record in the present case we are of the opinion that the evidence in the record is sufficient to establish the fact that appellee suffered from silicosis or sand-blasters' disease contracted while in the employ of appellant and that such disease is peculiar to those engaged in sand-blast work, to which workers are not ordinarily exposed in other lines of employment. The determination of these questions of fact was for the jury to pass upon and we do not feel warranted in setting aside the verdict of a jury on these propositions.

Appellant next urges that the court erred in refusing its two instructions numbers two and three but the abstract shows that appellant's given instructions numbers ten and eleven are duplicates of the refused instructions, hence there is no merit to counsel's contention.

Counsel also urge that the verdict is excessive and that the trial court in its rulings and conduct prejudiced appellant's case before the jury but after due consideration of the record we are of the opinion that the verdict should not be disturbed on these grounds. Appellee was 50 years of age, had an earning capacity

of over five dollars per day and the proof shows that he is permanently injured and unable to work.

For the reasons aforesaid the judgment of the circuit court is affirmed.

*Affirmed.*